# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

_____

Joseph Hofer,
      Petitioner


      vs.                          Case No. 1:09cv682
                                      (Beckwith, S.J.; Wehrman, M.J.)


Warden, Lebanon Correctional
Institution,
      Respondent

_____

## REPORT AND RECOMMENDATION
_____

Petitioner, who is in state custody at the Lebanon Correctional Institution in Lebanon, Ohio, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 with the assistance of counsel from the Ohio Public Defender's Office.  This matter is before the Court on the petition; respondent's "Answer/Return Of Writ" with exhibits, including transcripts from petitioner's two trials; and petitioner's "traverse" in reply to the return of writ.  (Docs. 1, 7, 10).

### Background

On May 4, 2005, the Adams County, Ohio, grand jury returned an indictment charging petitioner with one count of rape of his two-year-old daughter in violation of Ohio Rev. Code § 2907.02(A)(1)(b) & (B).  (*See* Doc. 7, Ex. 1 & Ex. 14, p. 2).

The trial proceedings commenced on March 29, 2006 with the selection and empanelment of the jury.  At the close of the prosecutor's power-point presentation to the jury during opening

statement on March 30, 2006, a photograph of the victim apparently was inadvertently shown "for

a split second ... on the screen" when the prosecutor was "shutting down the power." (*See* Doc. 7,

1st Trial Tr., Vol. III, Tr. 581-84, 591).  In the photograph, the victim, who was fully-clothed and

wearing diapers, was sitting looking straight at the camera with her legs extended and spread

slightly apart. (*See id.*, Tr. 587; *see also* Ex.12, p. 6 & attached photograph).

Defense counsel immediately moved for a mistrial, arguing that the photograph's display

prior to "authententication" and ruling by the trial court regarding its admissibility was "very

prejudicial in a case of this kind."  (*Id.,* 1st Trial Tr., Vol. III, Tr. 587, 599).  The prosecutor

vehemently opposed the mistrial motion; he argued that the photograph "of a child in a diaper, in

a dress, sitting on a counter," was not prejudicially "suggestive," and assured the court that he had

not intended to show the picture to the jury and that "[i]t was a mistake, clear and simple."  (*See

id.,* Tr. 589-94, 600).

After hearing counsels' arguments, the trial court granted defense counsel's motion and

declared a mistrial.  (*See id.,* Tr. 615-18).  The judgment entry filed on April 7, 2006 provided in

pertinent part:

> ....On March 30, 2006, at the conclusion of the State of Ohio's opening statement,
> a computer operation error, believed to be inadvertent in nature, occurred causing
> a photo of the alleged victim at an Easter party, to appear on a projection wall
> screen.  The photo had apparently been provided during discovery, however the
> Court had previously ordered counsel to not show any photos or written evidence,
> on the wall screen prior to a determination by the Court that said photos or proposed
> written evidence was admissible evidence for the Jury's consideration.
>
> Counsel for defendant made a Motion for a Mistrial, seeking a new Trial.  Pursuant
> to Rule 33(A)(1) and (3), the Court finds there was an "irregularity in the
> proceedings," and an "accident or surprise which ordinary prudence could not have
> guarded against."  This was, in the Court's opinion, enough to potentially endanger
> the due process rights of the defendant, therefore causing a declared Mistrial.

> The Court finds that it is the Court's belief, that the State of Ohio did not intend to provoke a Mistrial, and therefore Retrial is not barred....  The Court orders a Mistrial herein, and reschedules this matter for Trial and Pretrial/Review Hearings....

(*Id.,* Ex. 2).

Petitioner's trial counsel filed a notice of appeal from the April 7, 2006 judgment entry, but ultimately the appeal was voluntarily dismissed.  (*See id.,* Exs. 3-4).  On April 28, 2006, petitioner's counsel filed a motion for "DNA testing on the evidence submitted by the prosecution," which was granted.  (*Id.,* Ex. 5 & July 5, 2006 Pretrial Hearing Tr. 1-2).

Petitioner's retrial commenced on October 23, 2006.  Petitioner was represented by another attorney at his second trial.  Following a trial, the jury returned a verdict of guilt on the rape charge.  On February 16, 2007, the trial court determined petitioner to be a sexual predator and sentenced him to a life term of imprisonment for the rape offense.  (*Id.,* Exs. 7-9).

With the assistance of new counsel from the Ohio Public Defender's Office, petitioner filed a timely notice of appeal to the Ohio Court of Appeals, Fourth Appellate District.  (*Id.,* Ex. 10).  In the merit brief filed on his behalf, petitioner presented two assignments of error, including the claim that his trial counsel "rendered ineffective assistance ... and violated his rights under the Sixth and Fourteenth Amendments" by failing to move "to dismiss the indictment on double jeopardy grounds after the first trial ended in a mistrial due to the misconduct of the prosecution."  (*Id.,* Ex. 11).

On January 22, 2008, the Ohio Court of Appeals overruled petitioner's assignments of error and affirmed the trial court's judgment.  (*Id.,* Ex. 14).  In its Decision, the court made findings of

fact, which are presumed correct under 28 U.S.C. § 2254(e)(1),[1] based on evidence presented by

the State at the second trial regarding the incident that resulted in petitioner's indictment and

conviction:

> Hofer lived with Charity Nelson (hereinafter "Mother") and their two children. Their two-year-old daughter was the victim.
>
> One early afternoon in 2005, Mother returned home to find Hofer with the victim on the sofa.  She said, "When I walked in, I saw him on the couch, with just a blanket on, and he had..., [victim] was, she was uh, she was naked, and she was..., he had her on his face."  She explained, "He had her facing the other wall, with her feet towards his stomach, and her genitals were up on his face."  The Mother defined genitals as "vagina."  She said that she could tell that he had an "erection" because the blanket was "poofed up."  She said that Hofer had one hand on the victim's back and one hand down under the blanket.
>
> The Mother confronted Hofer and then left with their children.  She immediately told her mom, who is a nurse, about the incident.  She said that her "uncle and papaw" reported the incident to the Winchester Police Department.  The Mother's mom drove the Mother and victim to the hospital emergency room for a rape examination.
>
> During a taped interview played to the jury, Hofer admitted to Winchester Police Chief Phillip Patton, Jr. and Detective Jim Hietkemper of the Adams County Sheriff's Department that he stuck his tongue in the victim's vagina.  He further admitted to Chief Patton and Detective Hietkemper that, during the incident with his daughter, he got an erection and ejaculated into his underwear.  Hofer said that he had a flaw in judgment.  At some time during or after the interview, he wrote an apology letter and said that he was sorry for sticking his tongue in his daughter's vagina.
>
> At the hospital, Mother and victim saw Amiee Sundeen, who was a registered nurse and a Sexual Assault Nurse Examiner (hereinafter "SANE"), for a rape exam.

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence."  Petitioner has neither cited nor presented any evidence to rebut the Ohio court's factual findings quoted herein. Therefore, petitioner has not demonstrated by clear and convincing evidence that such findings are erroneous.

However, nurse Sundeen's training did not include sexual assaults of young children. Thus, she referred the victim to Children's Hospital in Cincinnati for a children's sexual assault exam and made all the arrangements.

Mother took the victim to Children's Hospital that same evening. They saw Mary Pat Burke, a registered nurse and a SANE nurse. After examining the victim, Nurse Burke did not find any evidence of sexual abuse. She said that her finding was not uncommon when oral sex was the alleged sexual assault. She said that if the victim urinated after the incident, then that event could wash the evidence away. The Mother said that the victim urinated two or three times between the assault and the examination.

Dan Laux, from BCI, verified that Hofer's underwear contained sperm. Linda Eveleth, also of BCI, verified that the sperm was consistent with Hofer's DNA.

(*Id.,* pp. 2-4).

With the assistance of his appellate counsel, petitioner next appealed to the Ohio Supreme Court; in the sole proposition of law presented in the memorandum in support of jurisdiction, petitioner alleged in pertinent part that "failure to move to dismiss the indictment on double jeopardy grounds after the first trial ended in a mistrial due to misconduct by the prosecution, constitute[s] ineffective assistance of counsel." (*Id.,* Ex. 16). On June 18, 2008, the state supreme court denied petitioner leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 18).

The same attorney from the Ohio Public Defender's Office who represented petitioner on direct appeal filed the instant federal habeas corpus petition on petitioner's behalf on September 16, 2009. (*See* Docs. 1-2). Petitioner alleges the following claim as the sole ground for relief in the amended petition filed the same date:

**Ground One:** Trial counsel for Mr. Hofer rendered ineffective assistance of counsel, in violation of the Sixth Amendment and *Strickland v. Washington*, 466 U.S. 668 (1984), when he failed to assert a double jeopardy violation and failed to move to dismiss Mr. Hofer's case during his second trial.

5

> **Supporting Facts:**  At the first trial, after the jury had been seated, the state displayed a photograph of the victim that the trial court had previously deemed inadmissible.  The defense moved for a mistrial, and the trial court granted that motion.  At the rescheduled trial, the state introduced incriminating DNA evidence that was not available to it at the time of the initial trial proceedings.  Defense counsel failed to move for a dismissal of the case on double jeopardy grounds, despite the fact that the state used the mistrial it caused as an opportunity to obtain scientific evidence against Mr. Hofer.

(Doc. 2, p. 6).

In the return of writ, respondent concedes that this case does not trigger any statute of limitations, exhaustion or waiver concerns.  (*See* Doc. 7, Brief, pp. 7-9).  Respondent contends that petitioner is not entitled to habeas relief because his claim lacks merit.  (*See id.*, pp. 12-23).

## OPINION

### Petitioner Is Not Entitled To Relief Based On His Sole Claim That Trial Counsel Was Ineffective In Failing To Object To The Second Trial On Double Jeopardy Grounds

Petitioner alleges as the sole ground for federal habeas relief that the attorney who represented him at his second trial was constitutionally ineffective for failing to object on double jeopardy grounds to the trial after prosecutorial misconduct caused a mistrial to be declared in the first trial.  (*See* Doc. 2, p. 6; Doc. 10, p. 2).  As respondent has conceded in the return of writ, the claim, which was raised to both the Ohio Court of Appeals and Ohio Supreme Court on direct review, is subject to review on the merits.

The Ohio Court of Appeals was the last state court to render a reasoned decision addressing the merits of petitioner's constitutional claim.  The court overruled the assignment of error, reasoning in relevant part as follows:

> The United States Supreme Court holds that "the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial." *Strickland v. Washington* (1984), 466 U.S. 668, 684.  "[A] fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for

6

resolution of issues defined in advance of the proceeding." *Id.* at 685.  As this court has stated, "effective counsel is one who 'plays the role necessary to ensure that the trial is fair.'"...  Therefore, "the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."...

In showing his attorney's ineffectiveness, Hofer must show two things: (1) "that counsel's performance was deficient[,]" which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[;]" and (2) "that the deficient performance prejudiced the defense[,]" which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland* at 687.

****

Hofer ... contends that his counsel should have moved to dismiss the indictment on double jeopardy grounds after the mistrial.  He claims that the prosecutor intentionally showed a sexually suggestive picture of the victim to the first jury that caused defense counsel to move for the mistrial.

The Supreme Court of the United States holds that "the circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial." *Oregon v. Kennedy* (1982), 456 U.S. 667, 679....

Here, the trial court found that the state did not intentionally show the picture to the jury.  Specifically, the trial court cited the *Oregon* case in its judgment entry granting Hofer's motion for a mistrial when it found "that it is the Court's belief, that the State of Ohio did not intend to provoke a Mistrial, and therefore Retrial is not barred."

When the mishap occurred, the trial court properly asked the state some pointed questions before it granted Hofer's motion for a mistrial, finding that the state did not intentionally show the picture to the jury.  "The trial court, having found that the prosecutor did not act with the design to create a mistrial, must be afforded deference in that finding."....

The record shows that the state indicated that the "split second" display of the photo occurred only because of a technical malfunction involving the computer projector and that it was "inadvertent."  The picture showed the victim fully dressed.  Her legs were apart but she was wearing a diaper.  Further, in the retrial, the court admitted the photo into evidence.  As such, we find that these facts support the trial court's

finding that the prosecutor's conduct was not calculated to manipulate Hofer into seeking a mistrial. Therefore, Hofer's retrial was not barred by the prohibition against double jeopardy. Consequently, we cannot find that Hofer's failure to move the court to dismiss the indictment on double jeopardy grounds was deficient under the first prong of the *Strickland* test.

(Doc. 7, Ex. 14, pp. 9-10, 12-13) (state case citations omitted).

In this federal habeas case, the applicable standard of review governing the adjudication of the constitutional claim addressed on the merits by the Ohio Court of Appeals is set forth in 28 U.S.C. § 2254(d). Under that standard, petitioner is not entitled to relief unless the state court's adjudication of the claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998).

A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942; *see also Thaler v. Haynes,* 130 S.Ct. 1171, 1173 (2010) ("A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the Supreme] Court.").

An "unreasonable application" of Supreme Court precedent occurs (1) if the state court

8

identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedents to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 407-08 (O'Connor, J.).

Under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, the application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also Bell v. Cone,* 535 U.S. 685, 694 (2002); *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942. The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

Here, the Ohio Court of Appeals correctly identified and applied the well-established two-prong test enunciated by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984), in addressing petitioner's ineffective assistance of counsel claim. As the Ohio Court of Appeals pointed out, to establish that his trial counsel was constitutionally ineffective, petitioner was required to show that (1) the attorney made such serious errors he was not functioning as "counsel" guaranteed by the Sixth Amendment; and (2) counsel's allegedly deficient performance prejudiced

the defense. *Strickland,* 466 U.S. at 687.

Under the first prong of the *Strickland* test, petitioner must show that counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id.* at 688. To satisfy the second "prejudice" prong of the *Strickland* test, petitioner must demonstrate that a "reasonable probability" exists that, but for counsel's alleged error, the trial outcome would have been different. *See id.* at 694. Petitioner has met his burden if he shows that the trial result would "reasonably likely have been different absent the error[]." *Id.* at 695.

The Ohio Court of Appeals determined in this case that petitioner failed to show that his counsel at the second trial acted unreasonably under the first prong of the *Strickland* test because the underlying double jeopardy claim lacks merit. The undersigned agrees with the state appellate court's determination and concludes that, in any event, the state court's adjudication of petitioner's ineffective assistance of counsel claim neither was contrary to nor involved an unreasonable application of the *Strickland* standard.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Constit. amend. V. The guarantee, which is applicable to the states through the Fourteenth Amendment, *Benton v. Maryland,* 395 U.S. 784, 794 (1969), protects against "a second prosecution for the same offense after conviction or acquittal." *Palazzolo v. Gorcyca,* 244 F.3d 512, 516 (6th Cir.) (citing *Ohio v. Johnson,* 467 U.S. 493, 498 (1984), and *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969), *overruled on other grounds by Alabama v. Smith,* 490 U.S. 794 (1989)), *cert. denied,* 534 U.S. 828 (2001).

10

As the Ohio Court of Appeals recognized in the instant case, the Supreme Court has held that the Double Jeopardy Clause may apply to prevent a retrial following a declaration of mistrial requested by the defendant for prosecutorial misconduct. *Oregon v. Kennedy,* 456 U.S. 667 (1982). In such cases, constitutional protections come into play only under a "narrow exception" created for cases involving "governmental actions intended to provoke mistrial requests" by defendants. *Id.* at 673-74. Therefore, even in cases where prosecutorial error was of a degree sufficient to warrant a mistrial, double jeopardy will not bar retrial at the defendant's behest absent a showing of *intent* on the part of the prosecutor to abort the trial by way of "goad[ing]" or provoking the defendant into moving for a mistrial. *Id.* at 676 (citing *United States v. Dinitz,* 424 U.S. 600, 609 (1976)); *see also United States v. White,* 914 F.2d 747, 752 (6th Cir. 1990).

The requirement of showing that the prosecutor intended to provoke a mistrial presents a high hurdle for a defendant to overcome. *United States v. Neufeld,* 949 F.Supp. 555, 559 (S.D. Ohio 1996) (and numerous cases cited therein), *aff'd,* 149 F.3d 1185 (6th Cir.), *cert. denied,* 525 U.S. 1020 (1998).[2] As Judge Posner of the Seventh Circuit explained in *United States v. Oseni,* 996 F.2d 186,

---

[2] It is noted that following the Supreme Court's decision in *Kennedy,* the federal circuit courts, including the Sixth Circuit, have been reluctant to find the requisite intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. *See, e.g., Hampton v. Moore,* No. 2:07cv747, 2008 WL 4137905, at *11 (S.D. Ohio Aug. 28, 2008) (King, M.J.) (Report & Recommendation) (unpublished) (citing following circuit court decisions: *United States v. Koubriti,* 509 F.3d 746, 749 (6th Cir. 2007), *cert. denied,* 552 U.S. 1328 (2008); *United States v. Thomas,* 728 F.2d 313, 318 (6th Cir. 1984); *United States v. Curry,* 328 F.3d 970, 973 (8th Cir. 2003) (retrial was not barred by post-trial grant of defendant's mid-trial motion for mistrial, because the prosecutor's misconduct in closing argument and in withholding material impeachment evidence was not intended to goad defendant to request a mistrial); *United States v. Strickland,* 245 F.3d 368, 384 (4th Cir.) (government's concealment of discoverable materials held not intended to provoke mistrial), *cert. denied,* 534 U.S. 894, 930 (2001); *Greyson v. Kellam,* 937 F.2d 1409 (9th Cir. 1991) (no double jeopardy bar to retrial where misconduct showed the prosecutor's desire to *convict,* and not an intent to provoke defendant into moving for a mistrial)).

11

188 (7th Cir. 1993) (citations omitted and emphasis added):

> The requirement of intent is critical, and easily misunderstood. The fact that the government blunders at trial and the blunder precipitates a successful motion for mistrial does not bar a retrial. Yet the blunder will almost always be intentional–the product of a deliberate action, not of a mere slip of the tongue. A prosecutor who in closing argument comments improperly on the defendant's failure to have taken the stand, thus precipitating a mistrial or a reversal on appeal, is no doubt speaking deliberately, though his judgment may be fogged by the heat of combat. *But unless he is trying to abort the trial, his misconduct will not bar a retrial. It doesn't even matter that he knows that he is acting improperly, provided that his aim is to get a conviction. The only relevant intent is intent to terminate the trial, not intent to prevail at this trial by impermissible means.*

Here, as respondent has argued in the return of writ (*see* Doc. 7, Brief, pp. 15-20), the record supports the finding that the prosecutor did not intend for the photograph of the victim to be displayed to the jury at all before a determination was made regarding its admisssibility, and certainly did not intend to provoke a mistrial when the photograph was mistakenly shown for a "split second" as the prosecutor was "shutting down" the power-point presentation at the close of his opening statement.

The undersigned has viewed a copy of the photograph that was flashed on the screen in the presence of the jury. (*See* Doc. 7, Ex. 12, attached photograph). Contrary to the contention asserted by defense counsel at the first trial, the photographic depiction of the fully-clothed victim does not appear to be "suggestive" or prejudicial in nature. Indeed, as the Ohio Court of Appeals pointed out in its direct appeal decision affirming petitioner's conviction on retrial, the photograph ultimately was determined to constitute admissible evidence at petitioner's second trial.

Upon review of the record, it appears that in granting the mistrial motion after the prosecutor's opening statement at the first trial, the trial court was not so much concerned about the content of the photograph, but rather on the fact that, albeit unintentionally, the prosecutor had

violated an express order of the court, apparently issued out of concerns about the power-point presentation, prohibiting the display of photographs or written evidence before a determination had been made by the court regarding their admissibility.  (*See* Doc. 7, Ex. 2 & 1st Trial Tr., Vol. III, Tr. 583-84, 588-89, 594-95, 605-06, 609, 614-15).  As the court indicated, it might have allowed the photograph to be admitted into evidence upon proper authentication during the trial.  (*Id.,* 1st Trial Tr., Vol. III, Tr. 595).  However, the court stated emphatically that it would "never" permit the photograph to be displayed "on the wall" before the jury as it had been.  (*Id.*).

Another factor weighing heavily in favor of a finding of lack of prosecutorial intent to provoke a mistrial is that the prosecutor vehemently opposed defense counsel's motion for mistrial when it was lodged.  The prosecutor vociferously argued that a mistrial was unwarranted because the display of the photograph was a "mistake, ... something we did not intend to do;" the photograph of the victim was not "suggestive" or prejudicial in nature; it was highly unlikely that the alleged misconduct of displaying the photograph for a second during opening statements would have prejudicially impacted the jury in determining petitioner's guilt or innocence; and that any risk of prejudice could be cured by the court in its instructions to the jury.  (*See id.*, Tr. 589, 591, 594, 600-05).  The prosecutor emphasized: "[T]he State would point out that it would be a horrific stretch to suggest that a fair trial is no longer possible because of a split second, inadvertent glimpse, by an unknown group of jurors, of a child, whose photo they[] very well likely will see when it's admitted" to establish the age of the victim.  (*Id.,* Tr. 605).  The prosecutor's strong argument for denying defense counsel's mistrial motion suggests that far from seeking to provoke a mistrial, the State desired to proceed to trial on the evidence that it then had in its possession.

Petitioner's counsel contends in the "traverse" brief filed in response to the return of writ that

there is evidence in the record to suggest that the State intended to provoke a mistrial to develop forensic DNA evidence that was not available at the first trial. (*See* Doc. 22). The Court is not persuaded by petitioner's argument.

First, and most importantly, it was petitioner, not the State, who moved to have the DNA testing conducted after the mistrial was declared. (*See* Doc. 7, Ex. 5 & July 5, 2006 Pretrial Hearing Tr. 1-2). Moreover, as respondent has argued in the return of writ (*see id.,* Brief, p. 21), the State already had strong evidence in the form of eyewitness testimony by the victim's mother and petitioner's own statements to the police to establish the rape offense. Petitioner points out that the prosecutor posed questions to prospective jurors during the jury selection process as to whether they could decide the rape case without the benefit of DNA or " high technology" evidence. (*See* Doc. 22, pp. 3-4). However, the questions posed do not establish, as petitioner contends, that the prosecutor intentionally sought to provoke a mistrial to develop such evidence as additional evidentiary support for an already very strong case against petitioner.

Accordingly, in sum, this Court concludes that the record supports the trial court's finding, which was affirmed by the Ohio Court of Appeals, that the prosecution did not intend to provoke a mistrial when the photograph of the fully-clothed victim was mistakenly and briefly displayed to the jury at the close of the prosecutor's opening statement. Therefore, it was reasonable for the state appellate court to further conclude that petitioner's trial counsel did not provide constitutionally deficient representation under the first prong of the *Strickland* test in failing to object to petitioner's retrial on double jeopardy grounds. The Ohio Court of Appeals' adjudication of the ineffective assistance of counsel claim neither was contrary to nor involved an unreasonable application of the applicable, clearly-established standards of review enunciated by the Supreme Court in *Strickland*

14

and *Kennedy*.  Therefore, petitioner has not demonstrated that he is entitled to habeas relief based

on the ineffective assistance of trial counsel claim alleged in the petition as the sole ground for relief.

### IT IS THEREFORE RECOMMENDED THAT:

1.  Petitioner's amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254

(Doc. 2) be **DENIED** with prejudice.

2.  A certificate of appealability should not issue in this case, because petitioner has failed

to make a substantial showing of the denial of a constitutional right in his sole ground for relief.  *See*

28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the

Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this

Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner

leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a);

*Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


Date: November 10, 2010                              s/ J. Gregory Wehrman

        cbc                                    J. Gregory Wehrman
                                            United States Magistrate Judge

C:\Documents and Settings\tammy\Local Settings\Temp\notes097731\09-682denypet.iac-DJ-NoMTD2dtrial.wpd

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

_____

Joseph Hofer,
      Petitioner,

                                Case No. 1:09cv682
      v.                         (Beckwith, S.J.; Wehrman, M.J.)

Warden, Lebanon Correctional
Institution,
      Respondent.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **within 14 days** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **within 14 days** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).