UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Joseph Hofer,                  :  Case No. 1:09-cv-682
                              :
     Petitioner,          :
                              :
vs.                          :
                              :
Warden, Lebanon Correctional  :
Institution,                :
                              :
     Respondent.          :

**ORDER**

Before the Court are Petitioner's objections to the Magistrate Judge's Report and Recommendation. (Doc. 15) The Magistrate Judge recommended that Petitioner's amended petition for a writ of habeas corpus be denied with prejudice. (Doc. 14) For the following reasons, the Court overrules the objections.

**FACTUAL BACKGROUND**

The following facts are established by the record. Petitioner Joseph Hofer was convicted of rape of a minor (his two-year-old daughter) by an Ohio state court jury. His jury trial began on March 29, 2006. At the end of the prosecutor's opening statement, the prosecutor displayed a photograph of the young victim on a screen which had been used for a PowerPoint presentation for the opening statement. The photograph in question showed the young girl fully-clothed, wearing diapers, sitting on a shelf or counter, looking straight at the camera

-1-

with her legs extended.  (See Doc. 7, Exhibit 12, State of Ohio's appellate brief with a xerox copy of the photograph attached.) As the trial judge later found, the photograph was inadvertently shown "for a split second" when the prosecutor was "shutting down the power." (Doc. 7, First Trial TR Vol. III at 581-84, 591) The trial court had ordered that no photographs were to be shown to the jury prior to a ruling on admissibility.  Hofer's counsel moved for a mistrial, which the prosecutor strenuously opposed.

Over the strong objections of the prosecutor, the trial court declared a mistrial.  (Doc. 7, First Trial TR Vol. III at 617)  The court's written judgment entry states that the photograph was displayed as a result of "a computer operation error, believed to be inadvertent in nature...".  The court concluded that an "irregularity in the proceedings" had occurred as a result of "accident or surprise which ordinary prudence could not have guarded against," pursuant to Ohio R. Crim. P. 33(a)(1) and (3).  The court also found that the State did not intend to cause a mistrial, and that re-trial of Hofer was therefore not precluded.  (Doc. 7, Exhibit 2)  Hofer appealed this order, but later voluntarily dismissed his appeal.  (Doc. 7, Exhibit 4)

Shortly after the mistrial was declared, the state disclosed lab and DNA results on evidence taken by the police, namely Hofer's underwear.  Hofer then filed a motion to permit

-2-

independent DNA testing on that evidence, which the trial court granted. Hofer's second trial began on October 23, 2006, for which Hofer was represented by new counsel (apparently due to changes in the local public defender's office). A new prosecutor was also involved who tried the case. A jury later found Hofer guilty, and he was then sentenced to life imprisonment with classification as a sexual predator. (Doc. 7, Exhibit 7)

Hofer appealed his conviction, presenting two assignments of error. One of those assignments claimed that his counsel rendered ineffective assistance by failing to move to dismiss the indictment "on double jeopardy grounds after the first trial ended in a mistrial due to the misconduct of the prosecution." (Doc. 7, Exhibit 11) The Ohio Court of Appeals rejected his claims and affirmed his conviction, and made extensive factual findings on the circumstances of the offense. (Doc. 7, Exhibit 14) Hofer appealed to the Ohio Supreme Court, raising a single argument that his counsel was ineffective. The Ohio Supreme Court summarily dismissed his appeal as not involving a substantial constitutional question. (Doc. 7, Exhibit 18)

Hofer's amended petition for habeas relief in this Court raises a single ground for relief:

> Trial counsel for Mr. Hofer rendered ineffective assistance of counsel, in violation of the Sixth Amendment and Strickland v. Washington, 466 U.S. 668 (1984), when he failed to assert a double jeopardy violation and failed to move to dismiss Mr. Hofer's case during his second trial.

-3-

(Doc. 2, p. 6)  The Magistrate Judge concludes, as Respondent has conceded, that the petition is reviewable on the merits.

**ANALYSIS**

Hofer's petition is governed by the requirements of the Antiterrorism and Effective Death Penalty Act.  Under the AEDPA, a federal court may not grant habeas corpus relief to a state prisoner unless it concludes that the state court's adjudication of the prisoner's claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).  "A state court renders an adjudication 'contrary to' clearly established federal law when it 'arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law' or 'decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'"  Carter v. Mitchell, 443 F.3d 517, 524 (6th Cir. 2007), citing Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  A state court unreasonably applies clearly established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id.

-4-

In defining the term "objectively unreasonable," the Supreme Court has stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Williams v. Taylor, 529 U.S. at 411.

In overruling Hofer's ineffective assistance claim, the Ohio Court of Appeals relied on Oregon v. Kennedy, 456 U.S. 667 (1982), which held that "the circumstances under which ...  a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial."  (Doc. 7, Exhibit 14 at p. 12, quoting Oregon v. Kennedy, 456 U.S. at 679.) The court of appeals noted that in Hofer's case, the trial court had asked pointed questions of the state before granting the mistrial, and had specifically found that the brief display of the photograph was an inadvertent error.  Moreover, the photograph itself was admitted into evidence in the second trial, supporting the state's argument that the photograph was not unduly prejudicial.  For these reasons, the court concluded that counsel's failure to seek a dismissal on double jeopardy grounds, based on intent of the prosecutor, did not amount to ineffective

-5-

assistance of counsel.  Hofer had not satisfied <u>Strickland</u>'s
first requirement of demonstrating that his counsel's performance
fell below an objectively reasonable standard.

The Magistrate Judge agrees with the state court's
adjudication of this claim, and concluded that in any event the
decision was neither contrary to nor involved an unreasonable
application of the standards articulated in <u>Strickland</u>, or of the
test for prosecutorial misconduct set forth in <u>Oregon v. Kennedy</u>.
The Magistrate Judge cited numerous cases from many courts
holding that the requisite showing of an intent by a prosecutor
to provoke a mistrial is a "high hurdle" for a petitioner to
overcome.  (Doc. 14 at pp. 11-12)  The Magistrate Judge found
that the photograph itself was not unduly suggestive or
prejudicial, as reflected by the fact that it had been admitted
during Hofer's second trial.  He also cited the prosecutor's
vehement objections to Hofer's request for a mistrial, and his
arguments that the brief, fleeting glimpse of the photograph was
both a mistake and could not have prejudicially impacted the
jury.

Based on these facts, the Magistrate Judge rejected Hofer's
contention that the state intended to provoke a mistrial in order
to utilize DNA evidence that was not available at the time of the
first trial.  He noted that it was Hofer who filed a motion for
DNA testing, not the state.  In addition, the state had strong

-6-

evidence against Hofer, both the eyewitness testimony of the victim's mother who found Hofer and the child together, and Hofer's statement to the police, in which he admitted to sexually molesting the child.  For all these reasons, the Magistrate Judge recommended that Hofer's petition be rejected.

In his objections, Hofer contends that the Magistrate Judge incorrectly concluded that it was Hofer who voluntarily sought DNA testing of evidence from the scene.  Hofer contends that his motion requested independent, third-party testing of results the state had obtained from the Ohio Bureau of Criminal Investigation and Identification ("BCI"), and had disclosed to Hofer **after** the March 30, 2006 mistrial was declared.  At a status hearing held on July 5, 2006 before the second trial, the trial court noted that on or about April 26, the state disclosed a lab report containing additional DNA testing, and after that disclosure Hofer filed his motion for independent testing.  The transcript of the July 5 conference reflects discussions about whether independent testing would or could be performed, or whether an independent lab would simply verify the procedures that had been utilized by BCI.  Defense counsel submitted a request for materials from BCI, which the parties discussed at some length. (See Doc. 7, July 5, 2006 Transcript at pp. 7-8, 15-20)  In any event, the record supports Hofer's argument that his own motion for independent testing came after the state disclosed additional

-7-

DNA results obtained from BCI.

Hofer then argues that the trial court's conclusion that the state did not intend to provoke a mistrial was made before the trial court learned that the state obtained the DNA test results from BCI.  The trial court never revisited the conclusion that the state had not deliberately provoked the mistrial. Hofer argues that none of the state courts assessed the fact of the acquisition of the DNA evidence, and how that might affect the objective analysis of the state's intent.  Hofer therefore contends that the state court of appeals' reliance on and deference to the trial court's conclusion is an unreasonable application of Strickland.

The Court rejects Hofer's arguments.  Both the state trial court and the court of appeals articulated the proper standards under Strickland, and the Double Jeopardy analysis set forth in Oregon v. Kennedy.  In evaluating whether the state intended to provoke a mistrial, the court should consider factors that include whether there was a sequence of overreaching prior to the incident, and whether the prosecutor resisted or was surprised by the defendant's motion for mistrial.  The court should also accord due deference to the trial court's findings concerning prosecutorial intent.  See United States v. White, 914 F.2d 747, 752 (6th Cir. 1990), citing Kennedy.

Here, the display of the photograph occurred at the end of

the prosecutor's opening argument, after a lengthy voir dire and seating of a jury. While the written transcript does not fully reveal the precise timing of the event, and parts of the transcript are described as "inaudible," Hofer does not dispute that the photographic image was briefly flashed on a screen while the prosecutor was shutting down the equipment before the defendant's opening statement. Defense counsel immediately asked for a sidebar conference and objected, to which the prosecutor stated "No, it was not purposeful. I hit the (inaudible) key to black out the ... Your Honor, I promise you I did not do anything purposeful. I hit the but - I wanted to turn it off so there would no longer be a distraction, because defense counsel (inaudible) distracting (inaudible)...". The court then recessed the jury to consider defendant's request for a mistrial. (Doc. 7, First Trial Trans. at 581-582) Based on this series of events, there was no prior incident of overreaching or objectionable behavior from the prosecutor.

From the arguments that followed, it is clear that the trial court was disturbed by the failure of the parties to clarify, before trial began, which photographs might be used during the trial and whether there were objections to any of them. When the court asked the prosecutor to respond to Hofer's claim of prejudice, he stated that "at the end of the State's closing, the State shutting down the power point as was previously agreed

-9-

procedure, the power point triggered two slides and for a split second there was that photo on the screen.  That absolutely happened just as I described."  Concerning the discussion of admissible photographs (which had apparently happened the night before), he stated that he had been ready to address that issue, but that he did not believe it was necessary to determine "before trial which ones we were going to use" because the state did not intend to use any of the photos in its opening.  (TR 591-592) Later, when the court again inquired as to why a mistrial should not be granted, the prosecutor requested the opportunity to brief the issue, because the inadvertent display of the photograph did not come close to the governing mistrial standards.  (TR 593-594) The court granted a recess for the parties to gather authorities in support of their positions.  From this series of events, the Court must conclude that the state vigorously opposed the mistrial motion and was ready to proceed with the trial.  This supports the trial court's conclusion that the display of the photograph was an inadvertent mistake and not intentional.

Moreover, the DNA evidence introduced at the second trial was not evidence that established that Hofer had physically touched, assaulted, or penetrated the child.  No DNA evidence was discovered on the child immediately after the incident, when she was taken to the Children's Hospital emergency room for a rape examination.  The evidence at issue was that semen found on

-10-

Hofer's underwear matched Hofer's DNA. As the state contends, this is not a situation of the state discovering "smoking-gun" evidence that would be helpful in a hotly contested trial. Rather, as the court of appeals noted, the evidence against Hofer even without the DNA evidence was overwhelming. The child's mother came home and found Hofer with the child held over his head and his face pressing her genitalia. He had a blanket over him, and the mother testified that he had an erection. In later interviews with the police, Hofer admitted that he had put his tongue into his daughter's vagina and that he had ejaculated into his underwear. (Doc. 7, Exhibit 14 at p. 3) His statements were admitted at trial after the trial court denied Hofer's suppression motion, and he did not contend on appeal that the ruling was erroneous.

Hofer's only witness, his brother, testified that Hofer and the mother fought a lot, and that the mother had exhibited some violent behavior. He also said at the time of the incident, Hofer was preparing to leave the state to live with a new girlfriend. Hofer must have hoped that the jury would consider the mother's testimony untruthful or motivated by revenge. But given her testimony and Hofer's own statements to the police, the DNA evidence was simply cumulative, as the state court of appeals observed.

Moreover, the court of appeals also rejected Hofer's

-11-

contention that the state intentionally sought a mistrial in order to complete the DNA testing.  The court stated that "It is not believable that the state would intentionally seek a mistrial in order to introduce a piece of useful, but far from critical evidence."  This Court agrees.  The Court concludes that the circumstances surrounding the display of the photograph do not suggest or raise an inference that the prosecutor intended to provoke defense counsel into seeking a mistrial, so that the confirmatory DNA evidence could be used.  If the prosecutor truly wanted a mistrial, the brief presentation of a non-prejudicial photograph of the fully-clothed child is a dubious manner in which to achieve that goal.

The Court agrees with the Magistrate Judge, albeit on somewhat different grounds, that the record does not support Hofer's contention that his counsel was ineffective in failing to move to dismiss the indictment based upon the Double Jeopardy clause.

Hofer also argues that given the facts surrounding the late DNA evidence and its use in his second trial, a motion to dismiss would have been meritorious and would have been granted, satisfying Strickland's second prong.  (Doc. 10 at p. 8)  Because the Court concludes that Hofer has not satisfied the first prong, of establishing that his counsel's failure to file a motion constitutes ineffective assistance, the Court does not reach this

-12-

argument.

## CONCLUSION

As required by 28 U.S.C. §636(b) and Federal Rule of Civil Procedure 72(b), the Court has conducted a de novo review of the record in this case.  Upon such review, the Court finds that except in the respect discussed above, Hofer's objections to the Magistrate Judge's Report and Recommendation are not well taken, and his objections are therefore overruled.

It is therefore ordered that the petition for a writ of habeas corpus is **DENIED** with prejudice.  A certificate of appealability shall not issue because jurists of reason would not find it debatable whether this Court is correct in concluding that the petition for habeas relief should be denied.  See Slack v. McDaniel, 529 U.S. 473, 484-85 (2000).

This Court **CERTIFIES**, pursuant to 28 U.S.C. §1915(a)(3), that an appeal from this Order would not be taken in good faith. Accordingly, Petitioner will not be granted leave to appeal in forma pauperis.  See Fed. R. App. P. 24(a); Kincade v. Sparkman, 117 F.3d 949, 952 (6th Cir. 1997).

SO ORDERED.

DATED: April 13, 2011  s/Sandra S. Beckwith
          Sandra S. Beckwith
          Senior United States District Judge